UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
*LOUISVILLE DIVISION*
(Electronically filed)

Civil Action No. 3:21-cv-612-RGJ

**Jury Trial Requested**

MATTHEW SCHRENGER                                                  PLAINTIFF

v.                                              COMPLAINT

ERIKA SHIELDS, in her                                              DEFENDANTS
official capacity as POLICE
CHIEF OF THE
LOUISVILLE METRO
POLICE DEPARTMENT,
LOUISVILLE METRO
POLICE DEPARTMENT
AND GREG FISCHER, IN HIS
OFFICIAL CAPACITY AS
MAYOR OF THE CITY OF
LOUISVILLE, CITY OF
LOUISVILLE, KY

    DEFENDANTS.

SERVE:
Erika Shields
633 W. Jefferson Street
Louisville, KY 40202

And

Greg Fischer
527 W. Jefferson Street
Louisville, KY 40202

-1-

I. **INTRODUCTION**

In this case, Plaintiff Matthew Schrenger brings this complaint against Defendants for violation of his constitutional and civil rights. A quiet, off-duty prayer, on a public sidewalk, resulted in Schrenger being immediately suspended for over four months, stripped of his police powers, and placed under investigation.

II. **JURISDICTION AND VENUE**

1. A majority of the claims in this action involve a substantial federal question including claims arising under the First and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331 and 1343.

2. On or about June 21, 2021, Officer Schrenger filed a charge with the Equal Employment Opportunity Commission ("EEOC") identifying conduct by the Louisville Metro Police Department ("LMPD") in violation of 42 U.SC. § 2000e et seq. Subsequently, the EEOC issued a right to sue notice on or about July 7, 2021, which was subsequently received by Schrenger. This lawsuit having been filed within 90 days of Schrenger's receipt of the right to sue notice, all statutory requirements for exhaustion of administrative remedies have been satisfied pertaining to his claims under 42 U.S.C. § 2000e et seq. This court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

3. Schrenger also brings statutory claims under the Kentucky Civil Rights Act, KRS 344 et seq., and under Kentucky common law. This court has supplemental jurisdiction over these claims as provided by 28 U.S.C. §1367(a), as these Kentucky law claims form part of the same case or controversy as the federal claims.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because the Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

5. This Court is authorized to grant Plaintiff's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k).

III. **STATEMENT OF FACTS**

6. On Saturday morning, February 20, 2021, at approximately 6:00 a.m., well before sunrise, Officer Matthew Schrenger of the LMPD joined his father for private prayer on a public sidewalk. Schrenger was not on duty at the time of the prayer.

7. The sidewalk was located outside of the EMW Women's Surgical Center, an abortion clinic.

8. Schrenger's prayer that morning was in support of the lives ended by abortion. His prayer came from his long-held, sincere religious beliefs.

9. EMW's security video, purportedly of Schrenger and his father, shows two nondescriptly dressed men, walking slowly up and down the sidewalk, primarily in the dark, alternatingly wearing a small 40 Days for Life sign.

10. 40 Days for Life is a well-respected, internationally coordinated, 40-day campaign that aims to end abortion through peaceful prayer and fasting in front of abortion businesses.

11. 40 Days for Life operates on an expressed discipline of avoiding all protesting or hostile engagement of any kind. Its participants are required to focus solely on prayer, as did Schrenger in this case.

12. The abortion business had not yet opened for the day. Consequently, there were no other people around except one individual at the very beginning of Schrenger's prayer, and a few who arrived as Officer Schrenger was leaving. The streets were largely empty of traffic during the predawn prayer on a Saturday morning.

13. LMPD subsequently accused Schrenger of "protesting" at the abortion clinic. Schrenger consistently and emphatically denied "protesting." Rather, he walked quietly and prayed quietly.

14. On the same morning, after Schrenger's off-duty prayer, Schrenger reported for his shift with the LMPD. Upon information and belief, LMPD officials were notified of Schrenger's prayer at the abortion clinic soon after he arrived for work.

15. That same day, Schrenger was locked out from his computer as well as from his car computer. Still during the same day, his police car also was taken away from him, and he was removed from the patrol schedule.

16. Schrenger was suspended that same morning, and he was stripped of his police powers during the time his off-duty prayer was supposed to be investigated.

17. LMPD wrongly accused Schrenger of violating LMPD Standard Operating Procedures (SOPs) and Kentucky law. As is immediately apparent, none of the allegedly violated SOPs or law were remotely intended to prohibit off-duty prayer of this nature. The plain language of the SOPs does not prohibit Schrenger's conduct whatsoever.

18. LMPD Chief Erika Shields herself publicly admitted she did not believe that Schrenger's conduct was clearly prohibited. When questioned about the Schrenger matter at a meeting of the Louisville Metro Council's Oversight and Audit Committee on March 2, 2021, Chief

Shields stated, "[A]s an employer, it's not black and white. And the policies have to be written in such a manner so that the subjectivity is taken away."

19. Under these circumstances, where Schrenger's conduct admittedly was not clearly prohibited, there should have been no suspension and no investigation.

20. Officer Schrenger is a 13-year LMPD veteran, with multiple commendations, and without any significant previous complaint against him. He has four young children to support. He is the sort of officer LMPD easily could have talked to, if LMPD found his off-duty prayer activities to be inappropriate.

21. Instead, LMPD apparently preferred to punish Schrenger unofficially by deliberately extending his suspension period, knowing the stress caused by having his career and livelihood dangling on the outcome of a protracted investigation.

22. When asked during the Louisville Metro Council's Oversight and Audit Committee on March 2, 2021, whether the investigation would "drag on forever," LMPD Chief Shields stated: "There's no reason that this [investigative] file should take any time at all."

23. Yet even as of that date, nearly two weeks after the off-duty prayer at issue, LMPD had not bothered even to interview Schrenger, despite his inquiries. In fact, LMPD did not get around to interviewing him until March 18, 2021 two weeks after Chief Shields publicly admitted that there is no reason the investigation should take any time at all.

24. The facts were never seriously in dispute. Schrenger was fully cooperative during the investigatory process, and readily admitted he had prayed on a public sidewalk while off duty. A security videotape of the entire "incident" had been publicized by the abortion clinic nearly immediately after it happened.

25. Upon information and belief, no additional investigatory steps apparently were taken following the interview on March 18, 2021.

26. Nonetheless, LMPD purposefully delayed concluding the inactive "investigation" for nearly another three months after the March 18 interview, despite two separate letters on behalf of Schrenger during that time, expressly indicating the personal harm the unnecessary delay was causing Schrenger.

27. Not until a letter dated June 15, 2021, did LMPD Chief Shields officially inform Schrenger that none of the allegations against him had been sustained. Instead of verbally informing him of that outcome or emailing him, Chief Shields solely relied on the slower mail method, further extending the delay.

28. Schrenger's police powers inexplicably were not restored until June 29, 2021, two weeks after the June 15, 2021 letter, and more than four months, plus a week, after Schrenger's suspension because of off-duty prayer.

29. While Schrenger did not engage in any political protest on duty or while displaying his uniform, he was treated very differently than other similarly situated LMPD officers who undeniably had engaged in true political protest and activism on issues of which LMPD officially approved.

30. Within a relatively close time proximity to Schrenger's early morning, off-duty prayer, other LMPD officers publicly marched -- while in uniform, apparently while on-duty—in an LGBT parade and in Black Lives Matter protests. Upon information and belief, LMPD officers' participation in some or all of these uniformed marches was done at the encouragement of the LMPD.

31. Open-records requests to LMPD revealed these other officers were not investigated, suffered no suspension and, in fact, no discipline whatsoever.

32. It is readily apparent that LMPD's actions against Schrenger were not due to some purported violation of the SOPs, but was retaliation and discrimination because of his prayer and sincerely held religious beliefs.

33. Without police powers, Schrenger was no longer able to work other jobs to supplement his police income. Off-duty work is a well-known and accepted practice throughout law enforcement and condoned by LMPD. Although he received some LMPD pay, he was not able to take advantage of overtime opportunities, nor was he able to continue his approved, uniformed, off-duty jobs.

34. LMPD's decision to suspend Schrenger caused him harm including loss of pay, humiliation, embarrassment, anger, and mental anguish. He sought counseling while on suspension. Schrenger has lost much of his job satisfaction, due to LMPD's purposeful mistreatment of him, despite his many years of loyal and exemplary service.

35. The various decisions causing harm to Officer Schrenger were made by Police Chief Shields, or by a subordinate acting on her behalf and ratified by Chief Shields as the final policymaker for the LMPD.

36. The decisions made by Chief Shields, as described above, were made in concert with Mayor Fischer, or adopted or ratified by him, as the final policymaker for the City of Louisville.

IV. <u>CAUSES OF ACTION</u>

## COUNT I
## VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRSTAMENDMENT TO THE UNITED STATES CONSTITUTION
## (42 U.S.C. § 1983)

37. Plaintiff hereby realleges and adopts all allegations set forth above.

38. The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiff's rights to free exercise of religion.

39. The Defendants subjected the Plaintiff to suspension and related mistreatment, because the Plaintiff, while off duty, engaged in quiet prayer on a public sidewalk in front of an abortion clinic.

40. The Defendants targeted the Plaintiff's right to freely exercise his religion.

41. The Defendants' actions in violation of the Plaintiff's First Amendment rights were performed under the color of state law.

42. The Defendants' actions were not narrowly tailored to further a compelling interest.

43. The Defendants' actions were not the least restrictive means of furthering any hypothetical compelling interest.

44. The Defendants' actions caused damage to the Plaintiff.

## COUNT II
## VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
## (42 U.S.C. § 1983)

45. Plaintiff hereby realleges and adopts all allegations set forth above.

46. The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiff's right to speech.

47. The Plaintiff's right to speak freely and honestly is fully protected even if the Defendants disapprove of the Plaintiff's pro-life views. The central role of the First Amendment is to protect the right of individuals to speak of their beliefs and views, particularly when the government disapproves.

48. On February 20, 2021, the Plaintiff was praying on a public sidewalk, a traditional public forum to which the First Amendment applies.

49. The Plaintiff's speech at issue was in the form of prayer, walking back and forth in front of an abortion clinic, periodically carrying a sign that read, "40 Days for Life."

50. The Plaintiff was not working as a policeman at the time of the speech at issue and was not displaying his police uniform.

51. The Plaintiff was speaking as a private citizen.

52. The speech involved was not part of the Plaintiff's official job duties.

53. To the extent the Plaintiff's speech concerned abortion, his speech was about a matter of public concern.

54. The Plaintiff's speech, in itself, did not promote any inefficiencies in the delivery of police services.

55. The Defendants suspended the Plaintiff for more than four months from his job duties expressly because of the Plaintiff's pro-life and religious speech as described above.

56. The Defendants' attempt to censor the Plaintiff's speech was based on the content of that speech and on its viewpoint.

57. The Defendants' actions were not narrowly tailored to further a compelling interest.

58. The Defendants' actions in violation of the Plaintiff's First Amendment rights were performed under the color of state law.

59. The Defendants' actions caused damage to the Plaintiff.

## COUNT III
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
## (42 U.S.C. § 1983)

60. Plaintiff hereby realleges and adopts all allegations set forth above.

61. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits any state from denying the protection of laws to any person within its jurisdiction.

62. Under the Equal Protection Clause, the government is required to treat similarly situated individuals in a similar manner.

63. The Equal Protection Clause places strict limits on the government's ability to infringe fundamental constitutional rights of all classes of persons.

64. The Defendants treated the Plaintiff substantially different than it treated other similarly situated LMPD officers who spoke or acted publicly on matters of public concern.

65. The Defendants treated the Plaintiff substantially different than it treated other similarly situated LMPD officers based on the Plaintiff's exercise of his religion.

66. The Defendants treated the Plaintiff substantially different than it treated other similarly situated LMPD officers based on the Plaintiff's pro-life speech.

67. The Defendants' suspension and mistreatment of the Plaintiff as described above placed a substantial burden on the Plaintiff's exercise of his fundamental First Amendment rights to Free Exercise and Free Speech, or substantially deterred the exercise of those rights.

68. The Defendants' actions were not narrowly tailored to further a compelling interest

69. The Defendants' actions caused damage to the Plaintiff.

## COUNT IV
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED.
### (42 U.S.C. § 2000e et seq.)

70. Plaintiff realleges and adopts all allegations set forth above.

71. Schrenger is devoutly religious and an excellent highly qualified police officer.

72. Because of his religious beliefs, Defendants suspended Schrenger causing him to lose substantial amounts of pay, and inflicting other harm on him.

73. Chief Shields, Mayor Fischer, and other LMPD decision makers were well-aware of Schrenger's religious beliefs when they made the decision to suspend him.

74. Defendants' treatment of Schrenger was substantially less-favorable than other similarly situated LMPD officers, causing Schrenger significant harm.

75. Defendants conduct, as set forth above, violated Officer Schrenger's rights under Title VII of the Civil Rights Act of 1964, as amended, set forth in 42 U.S.C. §§ 2000e et seq.

## COUNT V
### VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT
### (KRS 344 et seq.)

76. Plaintiff realleges and adopts all allegations set forth above.

77. Defendants conduct, as set forth above, violated the Kentucky Civil Rights Act.

## COUNT VI
## INTETIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiff realleges and adopts all allegations set forth above.

79. Defendants conduct, as set forth above, constitutes intentional infliction of emotional distress, under Kentucky law.

V. **PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

Wherefore, Plaintiff Matthew Schrenger, by counsel, respectfully prays for the following relief from this Court:

A. Trial by jury on all issues so triable;

B. Judgement in favor of Matthew Schrenger on all claims;

C. Judgment awarding Matthew Schrenger damages in an amount to be determined;

D. Judgment awarding Mathew Schrenger punitive damages;

E. Judgment awarding back pay and front pay in amounts to be determined;

F. Judgment awarding recovery of attorney fees in an amount to be determined;

G. Other legal and equitable relief as appropriate, including costs as allowed by law and pre- and post-judgment interest, in the maximum amount allowed by law.

    Respectfully submitted,

 s/Blaine R. Blood
_____
Blaine R. Blood, Esq. (#91363)
9850 Von Allmen Ct., Suite 201
Louisville, KY 40241

Matthew F. Heffron
(*pro hac vice pending*)
Thomas More Society
10506 Burt Circle, Suite 110
Omaha, NE 68114
*Attorneys for Plaintiff Matthew Schrenger*